RAYMOND SMITH ET UX v. DARLENE PIPPINS

73-43                              495 S.W. 2d 520

Opinion delivered June 11, 1973

*W. G. Dinning Jr.,* for appellants.

*Mike J. Etoch Jr.* and *A. M. Coates,* for appellee.

GEORGE ROSE SMITH, Justice. The appellee, Darlene Pippins, brought this suit to quiet her title to Lot 54, in the town of Poplar Grove, which she purchased from Luddie Baskin on May 16, 1970. The defendants, Raymond Smith and his wife, asserted title to the lot on the

theory that Mrs. Pippins' purchase had been nullified by a subsequent correction deed, substituting Lot 56 for Lot 54, and that thereafter the Smiths bought Lot 54 from Mrs. Baskin. The chancellor upheld Mrs. Pippins' title, finding that the correction deed was unilaterally executed by Mrs. Baskin without Mrs. Pippins' knowledge. The issue here is whether that finding of fact is clearly against the preponderance of the proof. Our study of the record convinces us that it is.

Five lots, numbered 54, 55, 56, 57, and 58, are contiguous. On May 10, 1970, when the Baskin-Pippins sale was orally agreed upon, Mrs. Baskin owned Lots 54, 55, and 56. She occupied a house that was partly on Lot 54 and partly on Lot 55. Lot 56 was vacant. Mrs. Pippins lived on the adjoining Lots 57 and 58.

The oral agreement was that Mrs. Pippins would buy all three of Mrs. Baskin's lots, for $3,000. At the time of the sale, however, Mrs. Pippins was able to pay only $500 in cash. Consequently attorney Douglas Anderson, who prepared the deed, described only Lot 54 in the conveyance. Mrs. Pippins testified that at the time it didn't make any difference to the parties which lot was conveyed, because she was expected to buy all three lots. The deed was executed on May 16, 1970. About two weeks later the oral agreement with reference to the other two lots was rescinded by mutual agreement.

Almost a year later, on April 19, 1971, Mrs. Baskin executed a correction deed to Mrs. Pippins as grantee. That deed, which was recorded promptly, purported to correct an error in the earlier conveyance by substituting Lot 56 for Lot 54. At about the same time, apparently, Mrs. Pippins employed the appellant Raymond Smith to take down the fence between Lots 56 and 57, so that Mrs. Pippins could plant a vegetable garden on the vacant lot. According to Mrs. Pippins, Mrs. Baskin suggested that Mrs. Pippins use the lot.

Mrs. Baskin occupied the house on Lots 54 and 55 until it burned in the fall of 1971. She collected the

insurance on the house. On November 2, 1971, Mrs. Baskin sold Lots 54 and 55 to the Smiths, who bought without knowledge of Mrs. Pippins' claim to Lot 54. Mrs. Baskin died a short time later. Mrs. Pippins testified that she knew nothing about the correction deed until the present controversy arose, when she went to the courthouse and discovered the deed in the recorder's office.

The pivotal question is whether Mrs. Pippins had knowledge of, and accepted, the correction deed. On the one hand, we have Mrs. Pippins' sworn statement that she knew nothing about the correction deed when it was executed. The chancellor, who heard the testimony at first-hand, credited that statement. It is also shown that in September, 1971, Mrs. Pippins paid the taxes on Lot 54, amounting to 63 cents.

On the other hand, there are several cogent circumstances indicating that the substitution of vacant Lot 56 for improved Lot 54 was a reasonable step for both parties to take. One: For about a year and a half after the original sale the seller, Mrs. Baskin, remained in possession of her home on Lots 54 and 55. Two: Of the original purchase price of $3,000, $500 was a more appropriate price for the vacant lot than for one of the improved lots. Moreover, the sale of a lot with only part of a house on it would be unlikely. Three: The correction deed was prepared by attorney Anderson. It would be somewhat unusual for a lawyer to allow his client to execute and record such a conveyance as a unilateral transaction. (Mr. Anderson was not called as a witness by either party.) Four: Mrs. Pippins took possession of the vacant lot, by having the fence torn down, and used the lot as a garden site. Five: Raymond Smith testified that when the fence was being removed Mrs. Pippins told him that she owned the vacant lot. Mrs. Baskin's aunt also testified that she heard Mrs. Pippins say that she was buying the lot and not the home. Six: Mrs. Baskin insured the house and collected the proceeds when it was destroyed by fire some months after the date of the correction deed.

We conclude that the clear weight of the evidence sustains the appellants' position. The decree is accordingly reversed and the cause remanded for the entry of a decree quieting the appellants' title to Lot 54 and reinstating the correction deed (which the chancellor canceled) as a valid conveyance of Lot 56 to Mrs. Pippins.

BYRD, J., dissents.